[No. 277.   Decided August 10, 1891.]

HENRY REHMKE v. J. C. GOODWIN, M. HORAN AND J. W. RICHARDS, *the Board of County Commissioners of Kittitas County, Washington.*

COUNTIES — LIMITATION OF INDEBTEDNESS — BONDS.

The constitutional limitation (art. 8, § 6) on counties contracting indebtedness in excess of one and one-half per cent. of their taxable property without a vote therefor, applies to the total indebtedness of counties, whether contracted prior or subsequently to the adoption of the state constitution.

County commissioners are not authorized to submit to a vote the question of ratifying or validating county indebtedness incurred in excess of the one and one-half per cent. limitation; but, in order to validate additional indebtedness, there must be prior assent

given thereto by a three-fifths vote at an election held for that pur-
pose.

Under the act of March 21, 1890, county commissioners are
authorized to issue bonds for the purpose of funding existing county
indebtedness up to the one and one-half per cent. limit without
submitting the question to a vote of the people.

*Appeal from Superior Court, Kittitas County.*

The facts are sufficiently stated in the opinion.

*Frost & Warner,* for appellant.

*D. H. McFalls,* for respondents.

The opinion of the court was delivered by

SCOTT, J.—In this action appellant seeks to enjoin the
respondents, the board of commissioners of Kittitas county,
from issuing the coupon bonds of said county in the sum
of $150,000, which bonds said board were attempting to
negotiate and issue. The complaint was demurred to, and
the demurrer was sustained, and judgment rendered dis-
missing the action. The purpose for which said bonds
were to be issued was to fund the outstanding indebtedness
of Kittitas county. The question of the issuance of such
bonds was submitted to the voters of said county at the
general election held on the 4th day of November, 1890,
and more than three-fifths of the votes cast thereat in said
county were in favor of such issuance. The injunction
was sought mainly upon the grounds that the various pro-
ceedings had in submitting the matter to a vote were im-
perfect and irregular, and that the vote thereon was void
in consequence thereof. The complaint does not sufficiently
present the points which the parties now desire to have
decided, but, to aid the same, it is conceded by the re-
spondents in their brief, and upon the argument, that the
amount of the bonds so proposed to be issued exceeded
the amount of one and one-half per centum of the total

property valuation of said county as ascertained by the last preceding assessment for state and county purposes, and both parties concede that part of said indebtedness was incurred before, and a part since, the state constitution became operative.

In the case of *Murry v. Fay, ante,* p. 352, this court, in construing § 3 of the funding bond act (see page 38, Sess. Laws 1889–90), held that county commissioners could issue bonds to fund lawful county indebtedness incurred within the limitations of § 1 of said act, without submitting the question of issuing to a popular vote. In this case we do not know what per cent. the outstanding indebtedness is of the total property valuation, except that it is greater than one and one-half per cent. thereof, and it is also conceded to be less than five per cent.; nor do we know what the proportion of the then existing indebtedness to the property valuation was at the time the constitution went into effect that is now outstanding; or whether any of the present indebtedness was incurred prior to January 1, 1888. If any such remains in existence, it could yet be placed in the form of bonds by the commissioners under the provisions of the county bond act passed by the territorial legislative assembly in 1888 (see Sess. Laws 1887–88, p. 10), even if in excess of the one and one-half per cent., but within the amount there limited. We are also satisfied that the whole of the lawfully contracted indebtedness, whenever incurred, not now exceeding one and one-half per cent. of the total property valuation, can be converted into bonds by the commissioners under the provisions of the funding bond act aforesaid, approved March 21, 1890, without submitting the question to a vote of the people; in fact, there is no authority for holding any such election. It is evidently within the intention of that act to cover or include all lawful indebtedness, up to the one and one-half per cent., without any regard to the time when it was contracted.

The indebtedness of this county, whatever it is, has apparently all been contracted by its commissioners without any vote of the people thereon; at least, it does not appear that any election has at any time been called or held to authorize the incurring of such indebtedness, or any part of it. It is contended by the respondents that the limitation contained in § 6, art. 8 of the state constitution, which provides that "no county . . . shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in such county, . . . without the assent of three-fifths of the voters therein, voting at an election to be held for that purpose, nor in cases requiring such assent shall the total indebtedness at any time exceed five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county purposes previous to the incurring of such indebtedness," has no reference to indebtedness contracted before the constitution became operative, and that the board of county commissioners had authority to incur indebtedness up to the one and one-half per cent. of such valuation in addition to such prior indebtedness, if any existed; but we do not agree with this contention. Of course, the constitution would not affect any prior indebtedness, but, if it amounted to one and one-half per cent. of the total property valuation, the commissioners would be powerless to contract any; if less than one and one-half per cent., then the commissioners were authorized to incur further indebtedness, not exceeding in amount the one and one-half per cent., including that in existence; otherwise the commissioners would be limited in expenditures for county purposes to a sum equal to the current revenue, unless an additional amount was authorized by a vote of the people as by law provided.

There was no law authorizing the commissioners to submit to a vote a question of ratifying or validating any pur-

ported indebtedness they had attempted to incur in excess of lawful limitation. They were empowered to submit a proposition to incur further indebtedness for county purposes, not exceeding five per cent. with the existing indebtedness, to a vote of the people, and, if three-fifths of the voters assented thereto, they could then contract it. In this case the vote was not taken to authorize them to incur further indebtedness, but to empower them to issue bonds for that existing, and also including an additional unauthorized amount which they had attempted to incur in excess of their authority. The vote thereon had no force, and the questions going to the regularity of the proceedings therein, are accordingly of no consequence, as the commissioners could have issued the bonds up to the one and one-half per cent. without a popular vote, and the vote in question could not validate their illegal acts wherein they had attempted to contract the excess. To have contracted any additional amount, they should have first submitted the matter to a vote, stating the amount required, and the purpose for which it was intended.

Upon the facts conceded, the judgment is reversed, and the court below is directed to overrule the demurrer, and proceed with the cause in accordance with this opinion.

ANDERS, C. J., and STILES, DUNBAR, and HOYT, JJ., concur.